UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HAROLD E. JONES,                           Case No. 1:15-cv-465
          Plaintiff,                       Barrett, J.
                                           Litkovitz, M.J.
     vs.

COMMISSIONER OF                            **REPORT AND**
SOCIAL SECURITY,                           **RECOMMENDATION**
          Defendant.

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial

review of the final decision of the Commissioner of Social Security (Commissioner) denying

plaintiff's application for disability insurance benefits (DIB) and issuing a partially favorable

decision on plaintiff's application for supplemental security income (SSI). This matter is before

the Court on plaintiff's Statement of Errors (Doc. 9), the Commissioner's response in opposition

(Doc. 15), and plaintiff's reply (Doc. 20).

**I. Procedural Background**

Plaintiff protectively filed his applications for DIB and SSI in September 2011, alleging

disability since July 28, 2006, due to depression, foot pain, decreased lung ability, respiratory

problems, diabetes, and lower back problems.[1] These applications were denied initially and

---

[1] Plaintiff states that his alleged onset date was initially amended to July 2008 and was later amended to September 2010. (Doc. 9 at 2, citing Tr. 268-73, 281-83, 285-87). Plaintiff's counsel submitted a pre-hearing memorandum alleging that plaintiff was disabled under the Medical-Vocational Guidelines consistent with an amended onset date of July 2008, but counsel alleged in the same memorandum that plaintiff "has been disabled since his second injury on July 28, 2006." (Tr. 271). Plaintiff's counsel submitted a brief to the ALJ prior to the administrative hearing in which he requested that the onset date be amended to September 2010. (Tr. 281-83). The issue of whether the alleged onset date should be amended was not addressed at the ALJ hearing. (Tr. 30-60). Counsel stated in a brief submitted following the hearing that plaintiff was "amenable" to an amended onset date of September 2010. (Tr. 285-87). There is no indication in the record that the alleged onset date was ever amended.

upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Larry A. Temin. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On February 7, 2014, the ALJ issued a partially favorable decision finding plaintiff became disabled on May 10, 2012, but was not disabled prior to that date. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

> 5) If the claimant can make an adjustment to other work, the claimant is not
> disabled. If the claimant cannot make an adjustment to other work, the claimant
> is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§

404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four

steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548

(6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th

Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. The [plaintiff] met the insured status requirements for disability insurance
> benefits on his alleged onset date of July 28, 2006, and continued to meet them
> through December 31, 2010.
>
> 2. There is no evidence that the [plaintiff] has engaged in substantial gainful
> activity since the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et
> seq.*).
>
> 3. The [plaintiff] has the following severe impairments: degenerative disc disease
> of the lumbar spine; chronic obstructive pulmonary disease/emphysema and status
> post thoracoscopic surgery; degenerative joint disease and arthritis of the right AC
> joint, status post two surgeries; and right carpal tunnel syndrome (20 CFR
> 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that
> meets or medically equals the severity of one of the listed impairments in 20 CFR
> Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526,
> 416.920(d), 416.925 and 416.926).

5. Careful consideration of the entire record shows that, prior to May 10, 2012, the [plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the [plaintiff] could perform work activity except as follows: He could lift, carry, push, and pull up to 10 pounds frequently and 20 pounds occasionally. She [sic] could stand and/or walk for up to 6 hours in an eight-hour workday. He could sit for up to 6 hours [in] an eight-hour workday. He could never crawl or climb ladders, ropes, and scaffolds. He could only occasionally stoop, kneel, crouch, climb ramps/stairs and reach above shoulder level with the right upper extremity. He could never work at unprotected heights or around hazardous machinery. He could not work with concentrated exposure to extreme cold, extreme heat, high humidity, fumes, noxious odors, dusts, or gases.

6. Careful consideration of the entire record shows that, beginning on May 10, 2012, the [plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). Specifically, he has the same residual functional capacity as set forth in Finding # 5 above, with the exception that, since May 10, 2012, he has been unable to lift/carry/push/pull more than 10 pounds occasionally and 5 pounds frequently or stand and/or walk for more than 2 hours in an eight-hour workday due to the progression of his chronic obstructive pulmonary disease.

7. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[2]

8. The [plaintiff] was 48 years old on his alleged onset date and considered to be a younger individual age 18-49. He turned 50 [in] July [] 2008, and has since been considered to be an individual closely approaching advanced age (20 CFR 404.1563 and 416.963).

9. The [plaintiff] has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

10. Prior to May 10, 2012, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled" whether or not the [plaintiff] has transferable job skills. Beginning on May 10, 2012, the

---

[2]Plaintiff's past relevant work was as a crystal grower/grinder, a heavy skilled position; a yard driver/material handler, a heavy semi-skilled position; a crew leader/animal farm/wood chipper, a medium skilled position that plaintiff performed at the heavy level; and a lumber sorter/puller, a medium unskilled position. (Tr. 20, 52-54).

[plaintiff] has not been able to transfer job skills to other occupations (See SSR
82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11. Prior to May 10, 2012, considering the [plaintiff]'s age, education, work
experience, and residual functional capacity, there were jobs that existed in
significant numbers in the national economy that the [plaintiff] could have
performed (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).[3]

12. Beginning on May 10, 2012, considering the [plaintiff]'s age, education, work
experience, and residual functional capacity, there are no jobs that exist in
significant numbers in the national economy that the [plaintiff] can perform (20
CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

13. The [plaintiff] was not disabled prior to May 10, 2012, but became disabled
on that date and has continued to be disabled through the date of this decision (20
CFR 404.1520(g) and 416.920(g)).

14. The [plaintiff] was not under a disability within the meaning of the Social
Security Act at any time through December 31, 2010, the date last insured (20
CFR 404.315(a) and 404.320(b)).

(Tr. 15-22).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,*

478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*,

---

[3]The ALJ relied on the VE's testimony to find that prior to May 10, 2012, plaintiff would be able to perform the
requirements of representative light occupations such as a merchandise marker (1,800 jobs locally and 220,440 jobs
nationally), usher (450 jobs locally and 87,080 jobs nationally), and inspector/hand packer (1,070 jobs locally and
131,490 jobs nationally). (Tr. 21, 55-56).

402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Opinion

On appeal, plaintiff alleges two assignments of error. (Doc. 9). First, plaintiff alleges that the ALJ erred by failing to properly weigh the medical opinion evidence in selecting an onset date of disability of May 10, 2012, instead of an earlier onset date to coincide with his September 2010 hospitalization for his pulmonary impairment. Second, plaintiff alleges that the ALJ erred in evaluating his credibility. The Commissioner contends that plaintiff has waived his arguments by failing to develop them and to provide any legal or factual support for the arguments. (Doc. 15 at 8-9). The Commissioner further argues that substantial evidence

supports the ALJ's decisions as to the weight given the medical opinion evidence and the ALJ's credibility finding. (*Id*. at 9-21).

   As an initial matter, the Court disagrees with the Commissioner that plaintiff has waived any argument pertaining to the weight the ALJ gave the medical opinions of record under Sixth Circuit law. *See Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006) (a plaintiff's failure to develop an argument in a Statement of Errors challenging an ALJ's non-disability determination amounts to a waiver of that argument); *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). In his Statement of Errors and reply memorandum, plaintiff has adequately presented the grounds for his argument that the ALJ erred in weighing the medical opinion evidence. (Docs. 9, 20). Plaintiff has sufficiently articulated his position that the ALJ erred by rejecting the opinions of the impartial medical expert, Dr. Oscar Farmati, M.D., which the ALJ had elicited. The Commissioner acknowledged in her response to the Statement of Errors that plaintiff alleged this error, and the Commissioner thoroughly responded to the alleged error by arguing that the ALJ properly weighed the opinions of Dr. Farmati and the other medical sources of record. (Doc. 15 at 9-16). Accordingly, it is appropriate to consider the merits of plaintiff's first assignment of error.

   The ALJ set an onset date of disability of May 10, 2012, "based on the severity of the pulmonary function studies," which established that plaintiff was limited to sedentary work and therefore "disabled" under Medical-Vocational Guideline Rule 201.10. On that date, plaintiff was examined by Dr. Martin Fritzhand, M.D., who assessed chronic obstructive pulmonary disease (COPD), chronic low back pain, hypertension, and Type II diabetes mellitus. (Tr. 511).

Dr. Fritzhand also interpreted pulmonary function studies performed on May 10, 2012, as showing "[s]evere obstructive pulmonary disease with moderately severe restrictive and bronchospastic components." (Tr. 513-14). Dr. Fritzhand opined that plaintiff appeared incapable of performing even a mild amount of sitting, ambulating, standing, bending, pushing, pulling, lifting and carrying heavy objects. (Tr. 511).

In declining to select an earlier onset date of disability, the ALJ rejected the opinion of the impartial medical expert, Dr. Farmati, whose opinion the ALJ elicited in this case and who opined that plaintiff was limited to sedentary work as of September 2010.[4] Dr. Farmati submitted answers to Medical Interrogatories propounded by the ALJ and completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical). (Tr. 653-55, 656-61). Dr. Farmati reviewed the medical records for the period April 3, 2009 through July 29, 2013 (Tr. 301-652) and reported that the data disclosed a number of positive findings. (Tr. 653). Dr. Farmati noted a background of heavy smoking, chronic bronchitis, recurrent respiratory infections, cough, wheezing, and dyspnea. (*Id.*). Records from a September 12 through 21, 2010 hospitalization at Clinton Memorial Hospital showed that plaintiff had developed a "pneumonic [right] sided infection complicated with pleurisy [and] empyema necessitating thoracotomy with drainage followed by long antibiotic therapy [and] secondary scarring." (*Id.*). Dr. Farmati reported that pulmonary function tests performed by Dr. Fritzhand in May 2012 indicated that "after the use of a bronchodilator the FVC = 2.62," which Dr. Farmati opined was not listing level but was "severly [sic] restricted." (*Id.*). Dr. Farmati opined that although the

---

[4] The ALJ may obtain evidence from a medical expert to clarify the nature and severity of the claimant's impairments. *See* 20 C.F.R. 404.1527(e)(2)(iii) and 416.927(e)(2)(iii).

value of FEV1 of 1.77 after the bronchodilator was above the Listing criteria of 1.55, this was a "technicality." (*Id.*). In Dr. Farmati's opinion, the result in combination with plaintiff's other impairments equaled the Listing. (*Id.*). The medical findings on which Dr. Farmati relied included an "elevated A1C" that was a probable indication of "neuropathy like carpal tunnel syndrome"; lumbar paresthesias; and skeletal issues including trauma to the right shoulder, arthropathy of acromio clavicular joint, degenerative "spondilitic" with discopathy of lumbosacral spine, and partial stenotic segments. (Tr. 653-54). Dr. Farmati opined that plaintiff's impairments in combination equaled Listing 3.02 for pulmonary impairments with an estimated onset date of May 2012 based on Dr. Fritzhand's report. (Tr. 654).

In the RFC assessment (Tr. 656-61), Dr. Farmati opined that plaintiff was limited to a range of sedentary work as of September 2010. In an 8-hour work day plaintiff could sit for a total of 6 hours and for 2 hours without interruption and stand/walk for one hour each and 30 minutes without interruption. (Tr. 657). Plaintiff could lift/carry 15 pounds occasionally, less than 15 pounds frequently, and 10 pounds continuously. (Tr. 656). Plaintiff was limited to occasional reaching with the right upper extremity, including overhead reaching. (Tr. 658). He could frequently push/pull with the lower extremities. (*Id.*). Plaintiff could frequently kneel; occasionally climb stairs and ladders, balance, stoop, and crouch; and never crawl. (Tr. 659). Plaintiff should never work around unprotected heights, humidity/wetness and dust/odors/fumes/ pulmonary irritants; he could be exposed to temperature extremes on a less than occasional basis; he could occasionally work around moving machinery and vibrations; he could occasionally operate a motor vehicle; and he was limited to moderate exposure to noise. (Tr. 660). Dr.

9

Farmati opined that these limitations dated back to shortly on or before September 2010.  (Tr. 661).

The ALJ rejected Dr. Farmati's opinion that plaintiff was limited to a range of sedentary work shortly on or before September 2010.  (Tr. 20).[5]  The ALJ disagreed with Dr. Farmati's opinion as to the onset date "in light of the evidence and the assessments from state agency evaluators, Drs. Villanueva and McKee, and the assessments of treating sources, Drs. Turba and Cha, who, as discussed [earlier in the ALJ's decision], find the claimant capable of performing light work *prior during* this time frame."  (*Id.*) (emphasis added).  The ALJ noted that the record contained no pulmonary function testing before May 2012, and he stated there was "no examination prior to that date that is inconsistent with an ability to perform work at the light exertional level."  (*Id.*).  The ALJ also stated that one would expect that plaintiff's primary care physician would have obtained pulmonary function testing or referred plaintiff to a pulmonologist for testing if his condition had been as severe as alleged prior to that date.  (*Id.*).  Finally, the ALJ found that plaintiff's continued smoking was inconsistent with his allegation of a disabling lung condition.  (*Id.*).

The ALJ's decision to reject Dr. Farmati's opinion that plaintiff was limited to sedentary work as of September 2010 is not supported by substantial evidence.  The reasons given by the ALJ for rejecting this opinion do not find support in the medical record.

---

[5] The ALJ also rejected Dr. Farmati's opinion that plaintiff's impairments equaled Listing 3.02A for chronic obstructive pulmonary disease (COPD).  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.  To satisfy Listing 3.02A, the claimant must suffer from "[c]hronic obstructive pulmonary disease, due to any cause, with the $FEV_1$ equal to or less than the values specified in table I corresponding to the person's height without shoes."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.02.

10

First, the ALJ relied on the opinions of treating orthopedic surgeons Dr. John Turba,

M.D. and Dr. Peter Cha, M.D. who, according to the ALJ, found plaintiff capable of performing

light work "*prior during* this timeframe." (Tr. 20) (emphasis added). In addition to failing to

clarify the "time frame" he meant to reference, the ALJ did not explain how the treating

orthopedists' 2005 and 2008 assessments temporarily restricting plaintiff to "light work" were

relevant to Dr. Farmati's assessment of a September 2010 onset date, which was based on an

exacerbation of plaintiff's pulmonary conditions. The assessments of the treating orthopedists

do not apply to the same "time frame" addressed by Dr. Farmati. Dr. Turba issued his

assessment in December 2005, which was before both the onset date alleged by plaintiff and the

second shoulder injury he sustained. (Tr. 585). Dr. Cha issued his assessment in September

2008 (Tr. 618), which was two years before the onset date assessed by Dr. Farmati. (Tr. 618).

The restrictions the treating orthopedists assessed were temporary and did not extend beyond

March 2009. More importantly, the orthopedic assessments were based on their treatment of

plaintiff's shoulder impairments, not his pulmonary impairments. (Tr. 585, 618). Plaintiff began

treatment with Drs. Turba and Cha beginning in 2005 for shoulder injuries he sustained in two

separate workplace accidents. (Tr. 573-84, 593-605; Tr. 301-24, 608-23). Although the treating

physicians continued to treat plaintiff subsequent to their 2005 and 2008 assessments, there are

no records from Dr. Cha after April 2009 (Tr. 623) or from Dr. Turba after February 2007 (Tr.

605), and neither physician provided any further assessments. The ALJ failed to explain how the

orthopedic opinions related to plaintiff's shoulder impairments in 2005 and 2008 undermined the

opinion of the pulmonology specialist, Dr. Farmati, that plaintiff's impairments became

debilitating in or around September 2010, when plaintiff was hospitalized for a collapsed lung

11

and thoracoscopic surgery.  Nor did the ALJ consider that Dr. Farmati's specialties include pulmonology (Tr. 655), which is an important factor to be weighed in this case as the ALJ's disability determination is based on the severity of the pulmonary function tests.  (Tr. 20).  *See* 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5)).  The ALJ's reliance on the opinions of Drs. Turba and Cha to reject Dr. Farmati's opinion is without substantial support in the record.

Second, the ALJ relied on the assessments of the nonexamining state agency physicians to find that plaintiff was capable of performing a limited range of light work prior to May 10, 2012, and to reject Dr. Farmati's opinion that plaintiff's disability had its onset in approximately September 2010.  (Tr. 19, 20).  Dr. Steve McKee, M.D., reviewed the record on May 22, 2012.  (Tr. 70-72, 83-85).  Dr. Esberdado Villanueva, M.D., reviewed plaintiff's records upon reconsideration on August 31, 2012.  (Tr. 95-97).  Both determined that plaintiff was capable of performing a restricted range of light work despite the severity of plaintiff's pulmonary function studies, which were part of the record at the time of their reviews.  The ALJ gave "great weight" to these assessments, finding they were consistent with the medical evidence and plaintiff's activities of daily living, and rejected Dr. Farmati's opinion of an earlier onset date based on these assessments.  (Tr. 19, 20).

While the ALJ gave these opinions "great weight" in finding that plaintiff had the RFC for light work before May 10, 2012, the ALJ necessarily rejected the opinions of Drs. McKee and Villanueva when he determined that plaintiff had the RFC for only sedentary work on and after May 10, 2012.  It was inconsistent for the ALJ to give these opinions "great weight" for purposes of plaintiff's functioning before May 10, 2012, and then implicitly reject those opinions for light work after May 10, 2012.  Drs. McKee and Villanueva relied on the same evidence for

both periods of time.  If the state agency reviewing physicians' assessments, which included an assessment of plaintiff's pulmonary function studies, were "consistent with the medical evidence of record," it is not clear why the ALJ did not adopt the limitations assessed in those opinions for the entire period of alleged disability.  *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) (a non-treating source's opinion is weighed based on how well-supported by evidence the opinion is). The ALJ did not explain why he rejected those opinions to find plaintiff capable of sedentary work on and after May 10, 2012; he did not identify the medical evidence that was consistent with the reviewing physicians' opinions before May 10, 2012; and the basis for the ALJ's finding cannot be discerned from his decision.  The ALJ did not fulfill his obligation to provide a reasoned explanation that is sufficient to allow the reviewing Court to ascertain whether the ALJ's decision in this regard is supported by substantial evidence.  *See Risner v. Comm'r of Soc. Sec.*, No. 1:11-cv-036, 2012 WL 893882, at *5 (S.D. Ohio Mar. 15, 2012)

Further, although the ALJ found the opinions of the state agency reviewing physicians were consistent with plaintiff's activities of daily living (Tr. 18-19), the ALJ's finding is not supported by the evidence he cited or the remaining evidence of record.  The ALJ did not reasonably rely on plaintiff's activities of daily living to credit the state agency reviewing physicians' opinions and to reject Dr. Farmati's opinion that plaintiff's restrictions limiting him to sedentary work had their onset in September 2010.  The ALJ noted that plaintiff had testified and provided information in April and May of 2012 indicating that he likes to work on cars and tries to work on his own car, and his activities included "occasionally tinker[ing]" in his garage, visiting his daughter and talking and watching television with her, riding a mower for short periods of time, going out daily, doing very few household chores, and attending to his personal

13

hygiene.  (Tr. 18-19, citing Tr. 231-38, 523-31).  Construing the evidence as a whole, these

activities are not indicative of plaintiff's ability to perform light work on a regular and

continuing basis despite his severe pulmonary impairment.  *See* SSR 96-8P, 1996 WL 374184, at

*1 (RFC is the assessment of an individual's ability to perform "sustained work-related physical

. . . activities in a work setting on a regular and continuing basis . . . [i.e.] 8 hours a day, for 5

days a week, or an equivalent work schedule.").

 In addition, the ALJ did not consider the specialties of the reviewing physicians when

weighing their opinions despite basing the onset date decision on pulmonary function test results.

(Tr. 20).  *See* 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5) ("We generally give more weight to

the opinion of a specialist about medical issues related to his or her area of specialty than to the

opinion of a source who is not a specialist.").  Specifically, the ALJ did not take into account that

whereas Dr. Farmati's specialties include pulmonology (Tr. 661), reviewing physician Dr.

McKee is an emergency medicine specialist (Tr. 75) and Dr. Villanueva is a family medicine

physician (Tr. 88).  The physicians' specialties are particularly relevant here given that the ALJ

determined the onset date based on the results of pulmonary function studies.  (Tr. 20).  The ALJ

erred by failing to take the regulatory factors into account when weighing the non-examining

physicians' opinions and by crediting Drs. McKee and Villanueva's opinions over that of Dr.

Farmati for reasons that are not substantially supported by the record.

 Third, the ALJ cited to the absence of any pulmonary function tests prior to May 10,

2012, and plaintiff's continued smoking throughout 2010 and 2011 to reject Dr. Farmati's

assessment of an earlier onset date.  The ALJ did not explain how either of these factors was

relevant to the onset date determination.  While the test results obtained by Dr. Fritzhand are

14

probative of the severity of plaintiff's pulmonary disease, the ALJ did not show there was a similar correlation between the failure of any physician to conduct such testing and plaintiff's pulmonary impairment. The failure to perform or refer plaintiff for pulmonary testing is not probative of the severity of plaintiff's pulmonary disease at a given point in time relative to another. The same is true of plaintiff's smoking habit. Plaintiff continued to smoke throughout the alleged period of disability and was still smoking as of the onset date found by the ALJ. Thus, the ALJ did not reasonably rely on the fact that plaintiff continued to smoke to reject an earlier onset date finding. Neither the failure to obtain pulmonary testing nor plaintiff's smoking are indicative of the severity of plaintiff's pulmonary symptoms for the period predating May 10, 2012, and are not legitimate bases for rejecting Dr. Farmati's assessment of the onset date. The ALJ's reasoning does not "build an accurate and logical bridge" between these factors and the May 2012 onset date finding. *See Fleischer v. Astrue,* 774 F. Supp.2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

Finally, where impairments are progressive in nature, the Commissioner must "infer the onset date from the medical and other evidence that describes the history and symptomology of the disease process." *Blankenship v. Bowen,* 874 F.2d 1116, 1122 (6th Cir. 1989) (quoting SSR 83-20). Social Security Ruling 83-20 provides in relevant part:

> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.

15

SSR 83-20, 1983 WL 31249, at *2-3 (1983). Here, the ALJ selected the date of Dr. Fritzhand's pulmonary function study as the date of plaintiff's onset of disability. Common sense dictates that plaintiff's pulmonary impairment did not suddenly become disabling on the date his pulmonary functioning was tested and not the week, month, or year before. Dr. Farmati assessed that the severity of plaintiff's pulmonary and other impairments limited him to sedentary work in September 2010, when plaintiff was hospitalized for thoracoscopic surgery. The ALJ should have evaluated the evidence of record, including Dr. Farmati's expert opinion, in inferring the onset date in accordance with SSR 83-20.

In sum, the ALJ did not reasonably rely on the opinions of Drs. Turba and Cha and the reviewing non-specialists to discount Dr. Farmati's opinion as to the onset date. Nor do the opinions of the state agency reviewing physicians, Drs. McKee and Villanueva, provide substantial support for the ALJ's decision to reject Dr. Farmati's opinion. The ALJ's decision to reject Dr. Farmati's opinion is not substantially supported by the record. The ALJ's decision that plaintiff's disability did not have its onset before March 10, 2012, should be reversed and remanded.[6]

Plaintiff also alleges that the ALJ's credibility finding is not supported by substantial evidence. Resolution of this issue may be impacted by the ALJ's reevaluation of the medical opinion evidence on remand. Accordingly, the Court need not address the ALJ's credibility finding at this time.

---

[6] Plaintiff also alleges that the ALJ improperly rejected Dr. Farmati's opinion that plaintiff's pulmonary disease medically equaled the severity of Listing 3.02A as of May 2012. (Tr. 17). It is not necessary to address this issue. The ALJ found plaintiff disabled as of the date plaintiff alleges the ALJ should have found his pulmonary impairment met the Listing.

**III. This matter should be reversed and remanded for further proceedings.**

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that all essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of his alleged onset date. *Faucher v. Secretary of H.H.S.,* 17 F.3d 171, 176 (6th Cir. 1994). This matter should be remanded for further proceedings, including consideration and reevaluation of the opinions of the medical sources of record, and reassessment of plaintiff's credibility and additional vocational testimony as warranted, consistent with this decision.

<strong>IT IS THEREFORE RECOMMENDED THAT</strong>:

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: 7/22/16

Karen L. Litkovitz
United States Magistrate Judge

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

HAROLD E. JONES,
     Plaintiff,

     vs.

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.

Case No. 1:15-cv-465
Barrett, J.
Litkovitz, M.J.

### NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).

18